**ALPHA ENTERPRISES, INC. Plaintiff,**

v.

**TOMATO LAND DISPLAY SYSTEMS, INC., et al., Defendants.**

No. C–1–97–668.

United States District Court, S.D. Ohio, Western Division.

March 24, 2000.

James Francis McCarthy, III, Katz Teller Brant & Hild, Cincinnati, OH, Joseph Andrew Sebolt, Canton, OH, for Alpha Enterprises In, plaintiff.

Gregory Frederick Ahrens, Wood, Herron & Evans, Cincinnati, OH, J Derek Vandenburgh, Merchant Gould Smith Edell, Welter & Schmidt, Minneapolis, MN, for Tomato Land Display Systems Inc, Tomato Land Co Ltd (Japan), defendants.

## ORDER

DLOTT, District Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment of Non–Infringement (doc. 26). Plaintiff Alpha Enterprises, Inc. alleges that Defendants Tomato Land Display Systems, Inc., Tomato Land Co. Ltd., and San–Ei Co. Ltd. infringed its Patent No. 4,589,549. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED.**

### I. FACTS

On May 20, 1986, United States Letters Patent No. 4,589,549 ("'549 Patent") was issued for an "Audio Cassette Package" to Plaintiff Alpha Enterprises, Inc. ("Alpha"), a manufacturer of audio and video security cases. The products at issue in this litigation are security cases for compact disks and audio cassettes. The specification of the '549 Patent shows a security case with a housing which defines a storage compartment for holding a cassette. A slide plate is "slidably" mounted on the housing and moveable between locked and unlocked positions. To hold the slide plate in the locked position, the '549 Patent uses levers on the slide plate which are engaged by projections mounted on the housing. The projections engage locking nubs on the levers which prevent the slide plate from moving to the unlocked position. When the slide plate is unlocked, cassettes can be inserted in or removed from the storage compartment. In the locked position, the edge of the slide plate covers part of the storage compartment to retain the cassette. The case is unlocked with a key that has three fingers which push through openings in the housing and cause the levers to bend and disengage the nubs from the projections.

Alpha requested reexamination of the '549 Patent in 1993. A reexamination certificate was issued on July 12, 1994. The amended Patent contains 32 claims. Claim 1 is representative of the claims at issue:

1. A package construction for holding an audio cassette, said construction including:

(a) an integral one-piece plastic housing having a cassette storage compartment formed therein at one end thereof, said compartment having an access opening for inserting and removing a cassette into and out of said compartment;

(b) lock means including a slide plate slidably mounted on the housing to move from an unlocked position to a locked position only partially across the access opening beyond which the plate is unable to move, said locked

position being for releasably securing a cassette in the compartment, said slide plate having at least one lever formed thereon;

(c) projection means formed on the housing for projecting within said housing being located and configured to engage the lever for retaining the slide plate in the locked position to secure a cassette in the storage compartment;

(d) said cassette storage compartment being defined by a pair of spaced sidewalls, a pair of spaced end walls, a bottom wall, and a flange formed on one of the ends walls and extending toward the slide plate and access opening for engaging an edge of the cassette when inserted in said storage compartment for releasably securing the cassette in the compartment in cooperation with the slide plate in the locked position in which the slide plate is adapted to engage an opposite edge of the cassette in the locked position; and

(e) separate key means engageable with the slide plate lever for moving said lever out of engagement with the projection means enabling the slide plate to be moved from the locked position to the unlocked position for removing a cassette from the storage compartment.

'549 Patent.

Defendant Tomato Land Display Systems, Inc. ("Tomato Land"), a distributor of audio and video security cases, entered the U.S. market in early 1997 with competing security cases made by Defendant San–Ei, Co., Ltd. ("San–Ei"), a manufacturer of audio and video security cases. Alpha filed the present suit on July 17, 1997, alleging that certain audio security cases manufactured and sold by Defendants infringe Alpha's '549 Patent. Alpha seeks an injunction, compensation, damages, and attorney's fees. Defendants move for summary judgment on the issue of non-infringement, arguing that the accused security case lacks the following claim element found in independent claims 1, 23, and 32 of the '549 Patent: "projection means formed on the housing for projecting within said housing being located and configured to engage the lever for retaining the slide plate in the locked position...."

## II. LEGAL STANDARDS

### A. Patent Infringement

■ Determining whether infringement has occurred involves a two-step analysis. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir. 1995). First, a court must construe the patent claims to determine their meaning and scope. *See id.* Claim construction is a matter of law for courts to decide. *See id.* at 979. A court considers three primary sources when construing a claim: the claim language, the specification, and the prosecution history. *See id.* Where necessary, a court may also look to extrinsic evidence such as expert testimony, dictionaries, or treatises for assistance. *See id.* at 979–80.

■ Second, the properly-construed claims are compared to the allegedly infringing product to determine whether infringement has occurred. *See Young Dental Mfg. Co. v Q3 Special Prods., Inc.*, 112 F.3d 1137, 1141 (Fed.Cir.1997). This is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir.1998).

■ An accused product may infringe a patent either literally or under the doctrine of equivalents. Literal infringement occurs when "the accused device embod[ies] every element of the patent claim." *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282 (Fed.Cir.1986). Under the doctrine of equivalents, a patentee may recover for infringement although the accused product falls outside the literal scope of the claims if there is "equivalence between the elements of the accused product ... and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hil-*

*ton Davis Chemical Co.,* 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

■ The doctrine of equivalents is met by proving that the alleged infringer's product or process performs substantially the same function in substantially the same way to accomplish the same result as the plaintiff's patent. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); *Valmont Industries, Inc. v. Reinke Mfg. Co.,* 983 F.2d 1039, 1043 (Fed.Cir. 1993). The doctrine of equivalents is applied on an element-by-element basis because each element is material to defining the scope of a claim. *See Warner–Jenkinson Co.,* 520 U.S. at 29, 117 S.Ct. 1040. Thus, in order for a court to find infringement, a plaintiff must show the presence of every element or its substantial equivalent in the allegedly infringing product. *See id.*

■ The doctrine of equivalents is limited by prosecution history estoppel. Prosecution history estoppel "precludes a patentee from obtaining . . . patent protection for subject matter which it relinquished during prosecution in order to obtain allowance of the claims." *Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.,* 66 F.3d 285, 291 (Fed.Cir.1995). To determine what subject matter was relinquished, courts use an objective standard of what a competitor reasonably would conclude from the patent's prosecution history. *See id.* The application of prosecution history estoppel is a matter of law. *See id.*

## B. Summary Judgment

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it shoulders the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quotation and emphasis omitted). For those issues where the moving party will not have the burden of proof at trial, the movant must "point[ ]out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

Infringement issues in patent cases can be resolved on summary judgment. A claim of literal infringement can be decided on summary judgment "when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings Inc.,* 160 F.3d 1350, 1353 (Fed.Cir. 1998).

On a claim of infringement under the doctrine of equivalents, the Supreme Court has stated that,

[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment. . . . Of course, the various legal limitations on the application of the doctrine of equivalents are to be determined by the court. . . . Thus, under the particular facts of a case, if prosecution history estoppel would apply or if a theory of equivalence would en-

tirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve.

*See Warner–Jenkinson Co.,* 520 U.S. at 38 n. 8, 117 S.Ct. 1040.

## III. JURISDICTION

This action arises under the Patent Laws of the United States. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a).

## IV. ANALYSIS

Defendants argue that they are entitled to summary judgment because they do not infringe the following '549 Patent claim element: a "projection means formed on the housing for projecting within said housing being located and configured to engage the lever for retaining the slide plate in the locked position" ("projection means limitation"). This claim element is found in independent claims 1, 23, and 32. Thus, the Court must properly construe this claim element and determine whether it is found in the accused device, either literally or under the doctrine of equivalents.

## A. Claim Construction

■ The Court will now construe the projection means limitation to determine the meaning and scope of the claim. The parties do not dispute the proper claim construction of the projection means limitation. Tomato Land offers the following construction:

> Starting with the claim language itself, the plain meaning of the words in the projection means limitation clearly requires a means which (1) is a projection, (2) is formed on the housing and projects into the housing; and (3) engages the lever on the slide plate to hold the slide plate in the locked position.

Defendants' Memorandum in Support at 14. Alpha does not dispute this construction, instead arguing that "elements corresponding to these claim limitations are found in the accused Tomato Land prod-ucts." Plaintiff's Memorandum in Opposition at 2.

Tomato Land also offers the following definitions: 1) "Projection" is defined as "a jutting out" or "a part that juts out." *Webster's Ninth New Collegiate Dictionary* 940 (9th ed.1987); 2) "Housing" is defined as "a case or enclosure." *Id.* at 585.

The Court agrees with the claim construction advanced by Tomato Land. Thus, the Court finds that the claim element in question: (1) is a projection, (2) is formed on the housing and projects into the housing, and (3) engages the lever on the slide plate to hold the slide plate in the locked position.

The Court will now discuss the meaning of some of the key terms in the claim element. "Without an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning." *York Prods., Inc., v. Central Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1572 (Fed.Cir.1996). Alpha does not dispute and the Court agrees with Tomato Land's definition of "projection" as "a jutting out" or "a part that juts out." Also, although neither party offers a definition of the verb "project," the Court believes it is important to provide one since much of the debate centers on whether the sloped surfaces of the accused device "project[ ] within said housing." The Court finds that "project" means "to jut out" or "extend beyond a given line." *Webster's Third New International Dictionary* 1813 (3rd ed.1993). The specification supports this definition. Projections 71 and 72 jut out from the housing into the interior space enclosed by the housing.

Additionally, although neither party offers a definition of the word "on," the Court finds such a definition to be of assistance. The Court defines "on" as "a function word to indicate position over and in contact with that which supports from beneath." *Id.* at 1574. Again, the specification is supportive. Projections 71 and 72 are on top of the housing, which supports them from beneath.

Finally, the Court agrees with Tomato Land's definition of "housing" as "a case or enclosure." *Webster's Ninth New Collegiate Dictionary* 585 (9th ed.1987).

The Court will now compare this properly-construed claim to the accused product to determine whether Defendants' product infringes, either literally or under the doctrine of equivalents, the '549 Patent.

## B. Comparison of the '549 Patent with the Accused Product

### 1. Literal Infringement

■ The Court finds that the accused product does not literally infringe the '549 Patent. Defendants claim that the accused product does not have a projection that projects into the housing to engage a lever for retaining the slide plate in the locked position. Plaintiff asserts that the sloped surfaces above the openings in the housing of the accused device are projections which project into the housing of the product. Defendants respond that the ramped surfaces do not meet the properly-construed "projection means" limitation because: (1) they are not "projections;" (2) they do not project into the housing; and (3) they do not engage the levers for retaining the slide plate in the locked position. The Court agrees with Defendants that the ramped surfaces are not projections which are formed on the housing for projection within said housing.

The locking member of the Tomato Land security case is locked in place when eight tongues on the outer walls of the locking member "snap" into eight openings in the inside walls of the casing housing. On top, each opening is defined by a ramped surface. Each of the eight tongues slides along the corresponding ramped surface until it snaps into the cor-

responding opening. Alpha claims that the ramped surfaces above each opening constitute projections.

The Court finds that the ramped surfaces do not constitute "projections." The ramped surfaces are carved into the casing housing. The outermost portion of the ramped surface is flush with the inner wall of the housing. Quite the opposite of jutting out, the ramped surface is an indentation in the inner wall of the housing.

Further, the Court finds that the ramped surfaces do not project into the housing. As previously defined, "housing" means a case or enclosure. Thus, the housing is the casing that encloses the interior space in which a casette can be placed. The projection is formed "on" the housing, meaning that the projection is positioned over and in contact with the housing, which supports it from beneath. The projection then "projects" within the housing meaning it juts out or extends beyond the line of the housing. When these terms are viewed together, the plain meaning of "projecting within said housing" requires the projection to jut out from the housing wall into the interior space enclosed by the housing. In contrast, the ramped surfaces in the Tomato Land product do not extend into the interior space of the housing whatsoever. They are carved into the housing. As previously stated, the outermost portion of the each ramped surface does not extend beyond the line of the inner casing wall. Thus, the ramped surfaces do not project into the housing as is required in the '549 Patent.

Once the claim element at issue is properly construed, the Court finds that no reasonable jury could find that the accused product has a protection which projects within the housing. On this basis, the Court grants summary to Defendants on the issue of literal infringement.[1] The

---

1. The use of the word "means" in the projection means limitation implies that it is a "means-plus-function" element governed by 35 U.S.C. § 112 ¶ 6. The statutory language of 35 U.S.C. § 112 ¶ 6 specifies that "[a]n element in a claim for a combination may be expressed as a means or step for performing a

specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." However, if a claim recites a function, but then provides sufficient structure,

Court will proceed to determine whether Defendants' product infringes the '549 Patent under the doctrine of equivalents.

## 2. Doctrine of Equivalents

■ The Court finds that there is no infringement under the doctrine of equivalents because the accused product is missing completely both a structural and a functional limitation recited in the '549 Patent. Each element in a patent claim is material to determining the scope of the patent. *See Warner–Jenkinson Co.,* 520 U.S. at 29, 117 S.Ct. 1040. In applying the doctrine, a court may not ignore structural or functional limitations of the claim. The Federal Circuit has explained that "a court may not, under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1532 (Fed.Cir.1987). The Federal Circuit further clarified that "[w]here a patent claim recites a specific function for an element of the claim and the written description reiterates the importance of that particular function, a patentee may not later argue, during the course of litigation, that an accused device lacking that functionality is equivalent." *Sage Prods., Inc. v. Devon Industries, Inc.,* 126 F.3d 1420, 1429 (Fed.Cir.1997). This is exactly what Plaintiff attempts to do in this case.

Defendants assert, and the Court agrees, that the accused device does not 1) have a structure which is a "projection," or 2) perform the function of "projecting within said housing." Plaintiff argues that the ramped surfaces are projections which project into the housing because they extend through the housing wall—from the outer to the inner surface. For the reasons discussed *supra,* the Court disagrees with Plaintiff and has found that the ramped surfaces are not projections, and that they do not project within the housing. This structure and function are completely absent from the accused device. To find that the indented surfaces in the accused device are somehow "equivalent" to projections which project within the housing "would entirely vitiate a particular claim element." *Warner–Jenkinson Co.,* 520 U.S. at 38 n. 8, 117 S.Ct. 1040. Accordingly, the Court grants summary judgment to Defendants regarding infringement under the doctrine of equivalents.

## IV. CONCLUSION

The Court finds that Defendants' product does not infringe the '549 Patent, either literally or under the doctrine or equivalents, as a matter of law. For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 26) is **GRANTED.**

**IT IS SO ORDERED.**

---

material, or "acts within the claim itself to perform entirely the recited function," section 112 does not apply. *Sage Prods. Inc. v. Devon Industries, Inc.,* 126 F.3d 1420, 1427–28 (Fed. Cir.1997).

There is no need to determine whether section 112 applies to the claim language at issue because there is no literal infringement regardless of the applicability of section 112. The Federal Circuit has explained that,

> for a means-plus-function limitation to read on an accused device, the accused device must incorporate the means for performing the function disclosed in the specification or a structural equivalent of that means, plus it must perform the identical function. Section 112 ¶ 6 can never provide a basis for finding that a means-plus function claim element is met literally where the function part of the element is not literally met in an accused device.

*Johnston v. IVAC Corp.,* 885 F.2d 1574, 1580 (Fed.Cir.1989). Because the Court finds that a function of the projection means limitation—projecting within said housing—is not literally met in the accused device, the applicability of section 112 is irrelevant.