**AIR TURBINE TECHNOLOGY, INC., Plaintiff,**

v.

**ATLAS COPCO AB, Atlas Copco Tools AB, Atlas Copco North America, Inc. and Atlas Copco Tools, Inc., Defendants.**

No. 01–8288–CIV.

United States District Court, S.D. Florida.

Sept. 23, 2003.

Ned Roger Nashban, Quarles & Brady, Boca Raton, FL, Richard L. Horn, Gregory M. Smith, Quarles & Brady, Chicago, IL, Casey Keeler Weidenmiller, Ka'imi Lani Jones, Quarles & Brady, Fort Lauderdale, FL, for plaintiff.

Susan Kohlmann, Brett Lewis, Pillsbury Winthrop, New York City, William Atkins, Guillermo E. Baeza, Scott J. Pivnick, Benjamin L. Kiersz, Pillsbury Winthrop, McLean, VA, Paul R. Griffin, Pillsbury Winthrop, San Francisco, CA, John C. Dotterrer, Palm Beach, FL, for defendants.

### ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT

MARRA, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judgment regarding breach of confidential relationship and fraud claims [DE 91], Defendants' Motion to Partially Dismiss Plaintiff's Lanham Act and Florida Unfair Competition Claims Under Rule 12(b)(1) [DE 245] and Defendants' Consolidated Motion for Summary Judgment [DE 250]. The Court has carefully considered the motions, responses, replies, and the arguments of counsel made at a hearing before the undersigned on September 11, 2003, and is otherwise fully advised in the premises.[1]

## I. BACKGROUND

The dispute between Air Turbine Technology, Inc. ("Plaintiff" or "ATT") and Defendants Atlas Copco AB,[2] Atlas Copco

---

1. The Court has also considered Plaintiff's Amended Response to Defendants' Motion for Summary Judgment regarding breach of confidential relationship and fraud claims [DE 231] and Defendants' Amended Reply thereto [DE 247].

2. The prior assigned judge for this case granted Defendants motion to dismiss Defendant

Tools AB, Atlas Copco North America, Inc., and Atlas Copco Tools, Inc. (hereinafter "Atlas Copco," unless specified) arose out of a Private Brand Agreement between ATT and Atlas Copco Tools AB ("AC-TAB"), the worldwide tool distribution subsidiary of Atlas Copco AB. *See* Exhibit A to First Amended Complaint [DE 8] (hereinafter, "Agreement"). In this Agreement, dated May 1, 1992, ACTAB was to sell Plaintiff's Model 201A grinder throughout the world except for the United States and Canada. *Id.*, ¶¶ 2, 3. Defendants referred to its product as TSF 06. The Agreement was terminated by ATT in March of 1993. The grinder tool that was the subject of the Agreement is an industrial strength hand-held turbine that contained patented technology, particularly a governor of the speed of the turbine that enhanced efficiency of the product. The Agreement stated that: "AC[TAB] will not exploit ATT's technology covered by ATT's patents. ATT will inform AC[TAB] well in advance before implementing any modifications or improvements of the Product. This provision is valid for the life of the patent (including applicable application periods)." Agreement, ¶ 6.

On September 16, 1993, ATT filed a patent application for a braking mechanism for the grinder tool. The United Stated Patent & Trademark Office ("PTO") issued a Patent Number 5,439,346 ("'346 patent'") on August 8, 1995 to inventor Gregory Bowser and ATT as the assignee of the patent. In October 1999, Defendants entered into a private brand agreement with a German company to sell their hand held turbine grinder tool under the Atlas Copco brand name. This product was labeled the TSF 07, and was sold from October 1999 through May of 2001. ATT gave notice of alleged infringement of

its '346 patent to the German company on April 3, 2001, and filed this lawsuit against Defendants on April 6, 2001.

ATT's First Amended Complaint alleges several claims. Plaintiff alleges in Count I that all Defendants infringed the '346 patent. In Count II, Plaintiff alleges that the Defendants violated the Lanham Act, 15 U.S.C. § 1125(a), by falsely advertising the features of the TSF 07 grinder, causing consumer confusion resulting in lost sales by ATT. First Amended Complaint, ¶¶ 28–30. In Count III, Plaintiff alleges that ACTAB breached the Agreement by manufacturing and selling competing products exploiting Plaintiff's technology. *Id.* at ¶ 36. Plaintiff brings a claim for fraud, alleging in Count IV that ACTAB fraudulently represented the purpose for which it entered into the Agreement with Plaintiff by intending to induce Plaintiff to divulge its proprietary information. *Id.* at ¶ 39. In Count V, Plaintiff alleges breach of a confidential relationship against ACTAB, by using its contractual relationship to obtain Plaintiff's confidential information and then using and disclosing that information to others. *Id.* at ¶ 43–44. Finally, Plaintiff alleges a common law unfair competition claim in Count VI. Here, Plaintiff states that Defendants have misappropriated ATT's technology and falsely represented the governor and braking attributes of its own tools to create consumer confusion as to the source of the tool. *Id.* at ¶¶ 48–49.

## II. DISCUSSION

### A. *Summary Judgment Standard*

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions

Atlas Copco AB for lack of personal jurisdiction [DE 40]. Therefore, this Defendant is no longer in the case.

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202.

## B. Patent Infringement

Defendants make several arguments in support of their motion on the patent infringement issues, including that there was no infringement, that even if there was infringement it was not willful, that ATT failed to mark its product with the patent number, that Defendants made no offer to sell after filing of the lawsuit, and that the inventor failed to disclose the best mode during the patent prosecution process.

### 1. Infringement

██ The Court recently construed the claims of the '346 patent. *See* Amended Claim Construction Order [DE 403]. The Court stated in part that: "A device that has a braking mechanism responsive to exhaust pressure falls within the '346 patent, whether or not such braking mechanism is responsive to something else at the same time." Following this claim construction, Defendant argues that its expert, Dr. Lee Swanger, concluded that the TSF 07 grinder is only responsive to *intake* pressure. However, ATT has submitted evidence in the record to create an issue of fact as to whether the TSF 07 infringes the '346 patent due to its use of exhaust pressure to activate the brake. *See, e.g.* Deposition of Dr. Jerome Catz at

pp. 98–102 [DE 295]; Deposition of Gregory Bowser at pp. 265–271 [sealed at DE 292]; and Deposition of Kemma Dodds, Vol. I, at pp. 32–33 [sealed at DE 292]. Upon reviewing this testimony, the Court concludes that summary judgment on the claim of infringement must be denied, as there are genuine issues of material fact as to whether the brake in Defendants' grinder is "responsive to exhaust pressure" as that phrase has been construed by this Court.[3]

## 2. Marking of ATT's Patented Product

■ A patentee cannot recover damages for infringement occurring prior to notice to the infringer of the infringement. 35 U.S.C. § 287(a). Constructive notice to the infringer is sufficient if the patentee can satisfy the marking statute. *Id.* A patentee must prove by a preponderance of the evidence that "substantially all of [its products] were marked, and that once marking was begun, the marking was substantially consistent and continuous." *Nike, Inc. v. Wal–Mart Stores, Inc.,* 138 F.3d 1437, 1446 (Fed.Cir.1998), *cert den.,* 528 U.S. 946, 120 S.Ct. 363, 145 L.Ed.2d 284 (1999). Plaintiff argues in opposition to Defendant's motion for summary judgment on this issue, that consideration of this damages issue must occur after resolution of infringement. The Court disagrees. There is no legal reason why the Court cannot conclude the absence of marking as a matter of law before the issue of infringement is resolved. *See Cybiotronics, Ltd. v. Golden Source Electronics Ltd.,* 130 F.Supp.2d 1152, 1160–61 (C.D.Cal.2001) ("Though the determination of proper marking is a question of fact, it is appropriate to resolve on summary judgment where there is no issue of material fact as to substantial or consistent marking.").

■ Defendants put forth evidence that ATT only marked approximately 16% of its Model 201 grinder prior to 2002. *See* ATT's Supplemental Response to ACTAB's First Set of Interrogatories, Response to Interrogatory No. 6 at p. 17 of Defendant's Exhibit E to Defendants' Notice of Filing of Exhibits to Consolidated Motion for Summary Judgment I [DE 241] (hereinafter, "Defendants' Exhibit 'X' "); ATT's Response to Defendants' First Set of Requests for Admissions, Response to Requests 27–28 at p. 9 of Defendant's Exhibit II [sealed at DE 250]; Declaration of Benjamin Kiersz regarding photographs of ATT's tool, Defendant's Exhibit I [DE 241]. In its opposition to the motion and at oral argument, ATT does not dispute this evidence. Although ATT argues in its brief that Defendants were on notice of the '346 patent upon its issuance, ATT also concedes that it "did not disclose its application for, or its receipt of, U.S. Patent No. 5,439,346 to ACTAB before ATT filed suit." Plaintiff's Response and Counterstatement to Defendants' Statement of Undisputed Facts at ¶ 12 [sealed at DE 282]. ATT therefore did not present any evidence to meet its burden as to compliance with the marking statute. Rather, the record evidence shows the absence of a genuine issue of material fact that ATT did not provide actual or constructive marking notice of the '346 patent prior to filing suit. The Court concludes, as a matter of law, that ATT cannot recover damages for any infringement occurring before April 6, 2001, the date of the filing of this lawsuit.

## 3. Best Mode Requirement

Defendants argue that ATT cannot claim infringement because the '346 patent

---

**3.** Similarly, the Court concludes that given the testimony of Bowser and Dodds that Defendants' product contains the same braking mechanism as in the '346 patent, summary judgment on the issue of wilful infringement should also be denied.

is invalid for failure to disclose the best mode of the invention. In particular, Defendants argue that the inventor knew that oil-free maintenance was required for efficient use of the invention, rather than the traditional method of using oil lubricants.

■ The specifications of a patent must "set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112, ¶ 1. The Federal Circuit has held that a best mode inquiry contains two parts:

> the first inquiry, which is entirely subjective, one must ask whether, at the time the patent application was filed, the inventor knew of a mode of practicing the claimed invention that he considered to be better than any other.... [T]he second inquiry ... involves determining whether the specification adequately disclosed what the inventor contemplated as the best mode so that those having ordinary skill in the art could practice it. This latter inquiry is 'largely an objective inquiry that depends upon the scope of the claimed invention and the level of skill in the art.'

*Young Dental Mfg. Co., Inc. v. Q3 Special Products, Inc.,* 112 F.3d 1137, 1144 (Fed. Cir.1997). The "party seeking to invalidate the patent must present clear and convincing evidence that the inventor both knew of and concealed a better mode of carrying out the claimed invention than was set forth in the specification." *Id., citing Transco Prods., Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 560 (Fed. Cir.1994).

The Federal Circuit recently summarized the few decisions that have invalidated patents under the best mode rule:

> [W]e have held a patent invalid for failure to satisfy the best mode requirement in two situations. First, we have invalidated patents when they do not adequately disclose a preferred embodiment of the invention. This is what

occurred in *Northern Telecom, Chemcast,* and *United States Gypsum Co.* Consequently, if an inventor fails to disclose the preferred embodiment of the invention, the best mode requirement is not satisfied.

> Second, we have invalidated patents when the patentee failed to disclose aspects of making or using the claimed invention and the undisclosed matter materially affected the properties of the claimed invention. In *SpectraPhysics* and *Nobelpharma,* the inventors failed to disclose subjective preferences that related to making the inventions, and the undisclosed information materially affected the properties of the claimed invention. In *Dana* and *Great Northern,* the inventors failed to disclose subjective preferences that related to the use of the claimed inventions, and the undisclosed information materially affected the properties of the claimed inventions.

*Bayer AG v. Schein Pharmaceuticals, Inc.,* 301 F.3d 1306, 1319 (Fed.Cir.2002).

In this case, Defendants have put forth clear and convincing evidence that Gregory Bowser, the inventor of the '346 patent, knew that oil-free lubrication was the best mode of using the claimed braking mechanism. *See* Deposition of Gregory Bowser at pp. 95–100, Defendants' Exhibit U [sealed at DE 250]. Turning to the second part of the inquiry, ATT argues that the best mode requirement does not apply to "routine details." Routine details are "details that are apparent to one of ordinary skill in the art." *See Young Dental,* 112 F.3d at 1144. The Court agrees, however, the issue becomes whether the admonition to use lubricant-free, compressed air is a routine detail known to those skilled in the art, or, whether it is a preference that related to the use of the claimed inventions, the non-disclosure of which material-

ly affected the invention's properties. *Bayer AG*, 301 F.3d at 1319.

Of the cases in which a patent was invalidated, the case which is factually the most similar case to this case is *Dana Corp. v. IPC Ltd. Partnership*, 860 F.2d 415 (Fed. Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). In *Dana*, the invention at issue, a Valve Stem Seal, served to prevent oil leakage from the valve guide into the cylinders of an engine. 860 F.2d at 416. The Federal Circuit reviewed the evidence presented at a trial and concluded that a judgment notwithstanding the verdict should have been granted because the inventor "believed that the best way of carrying out his invention included fluoride-treating the surface of the valve seals." *Id.* Such treatment was not disclosed in the patent.

■ The *Dana Corp.* decision is distinguishable from the case at bar because the valve stem seal invention required that the valve surface receive the fluoride treatment prior to its use in order to have the properties claimed in the patent. In this case, it is arguable that the disclosure to use lubricantfree compressed air is more akin to a maintenance or routine detail known to someone of ordinary skill in the art of motors and brakes. Bowser Deposition at pp. 31 and 96 (see errata sheet for clarification of answer at line 4) [sealed at DE 292]. In addition, it is arguable that the use of lubricants does not eliminate the value of the patented braking mechanism. Rather, it increased the "coast-down time" of the brake. Bowser Deposition at pp. 99–100. The Court concludes that there is sufficient record evidence to create a genu-ine issue of material fact as to whether the failure by the inventor to disclose that lubricant-free compressed air should be used with the '346 patent violates the best mode requirement or whether use of lubricant-free air is a routine detail known to those of ordinary skill in the art for which the best mode requirement does not apply.[4]

### 4. "Offer to sell" Requirement

■ Defendants argue that they have not made an "offer to sell" their TSF 07 product as required for a showing of infringement under 35 U.S.C. § 271(a). As a result, Defendants contend they cannot be liable for damages subsequent to the filing of this lawsuit. Plaintiff has presented evidence that Defendants offered their products through a catalog and a website after April 6, 2001, the date this lawsuit was filed. Defendants argue that they never used pricing information, a necessary component of an offer to sell.

Plaintiff relies upon the Federal Circuit statement that "[o]ne of the purposes of adding 'offer[ ] to sell' to § 271(a) was to prevent exactly the type of activity [Defendant] has engaged in, i.e., generating interest in a potential infringing product to the commercial detriment of the rightful patentee." *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1379 (Fed. Cir.1998). However, the specific decision in *3D Systems* was that "price quotation letters can be regarded as 'offer[s] to sell' under § 271 based on the substance conveyed in the letters, i.e., a description of the allegedly infringing merchandise and

---

4. Defendants argue that the need to use lubricant-free air was a novel idea and therefore needed to be disclosed. *Eli Lilly and Co. v. Barr Laboratories, Inc.*, 251 F.3d 955, 964 (Fed.Cir.2001) ("If the best mode for carrying out a claimed invention involves novel subject matter, then an inventor must disclose a method for obtaining that subject matter even

if it is unclaimed."). Plaintiff has put forth sufficient evidence that one of ordinary skill in the art would have known that oil should not be used in such turbine tools to create a factual question regarding this issue. Bowser deposition at 30–31; *Young Dental*, 112 F.3d at 1144.

the price at which it can be purchased." 160 F.3d 1373 at 1379. More importantly, the Federal Circuit stated two years later that: "the meaning of 'offer to sell' is to be interpreted according to its ordinary meaning in contract law." *Rotec Industries, Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1255 (Fed.Cir.2000).

Defendants cite to a district court decision in which the court concluded that it was:

> reluctant to conclude that these web advertisements are sufficient, in and of themselves, to constitute an offer to sell, because they do not contain pricing information and/or other ordering information. See *Biometics, LLC v. New Womyn, Inc.,* 112 F.Supp.2d 869, 873 (E.D.Mo.2000) (concluding that web site ads were an offer to sell within the meaning of Section 271(a), where web site contained pricing information, request form for web site visitor to request additional information on product and independent sales representative locator); *VP Intellectual Properties, LLC v. IMTEC Corporation,* 1999 WL 1125204, *5–6 (D.N.J. Dec. 9, 1999) (holding that an Internet site containing product descriptions but no pricing information is not an "offer to sell"); *Intel Corporation v. Silicon Storage Tech. Inc.,* 20 F.Supp.2d 690, 696 (D.Del.1998) (holding that mere advertisements which are directed at a national audience and contain no pricing information are insufficient in and of themselves to constitute an "offer to sell").

*Lucent Technologies, Inc. v. Newbridge Networks Corp.,* 168 F.Supp.2d 181, 229 (D.Del.2001).

In reviewing all of the case law, this Court concludes that a catalog or website that does not contain pricing information does not constitute an offer to sell. Plaintiff argues that "other ordering information" mentioned in *Lucent* could include a

telephone number on the website. This argument is indistinguishable from the cases holding that a print catalog which does not contain prices but contains a toll-free telephone number is not an "offer to sell." Even including a link on a website that leads a customer to ordering information on another related website is more akin to advertising without prices than an actual "offer to sell." This conclusion regarding Defendants' website is made as a matter of statutory interpretation of "offer to sell" in the absence of disputed facts about the amount of ordering information on the site.

Having reached this legal conclusion, the Court notes that Plaintiff also argues in its opposition memorandum and in its counter-statement of facts that Defendants sold the infringing TSF 07 grinder under other product names. *See* Deposition of Simon Shane, Jan. 31, 2002, at p. 227 [sealed at DE 292]. Therefore, this Court grants the motion for summary judgment to the extent that the Defendants' website without pricing information does not constitute an "offer to sell" under 35 U.S.C. § 271(a). If Plaintiff has other competent disclosed evidence to prove post-filing offers to sell, it may proceed at trial on those claims.

### C. Lanham Act

In Count II of the Amended Complaint, ATT asserts a claim for false advertising pursuant to 15 U.S.C. § 1125(a)(1)(B). The language of the complaint itself is somewhat vague, since it alleges that Defendants: "used false and misleading descriptions of fact, and false and misleading representations of fact which are likely to cause confusion, or mistake as to the origin, sponsorship or approval of [Defendants'] products with Air Turbine products...." Amended Complaint, ¶ 29. At oral argument on the motions for summary judgment, counsel for Plaintiff stated

that the claim is one for false advertising. The Court agrees, as there is no evidence in the record that consumers were confused as to the origin of a particular product. Rather, ATT argues that the Defendants' false advertising caused consumers to purchase Defendants' product under false pretenses, resulting in consumer dissatisfaction with the entire class of handheld turbine grinder tools. As a result of this alleged dissatisfaction, ATT contends consumers did not purchase its products resulting in damages to ATT.

### 1. Jurisdiction over ACTAB

■■ Before turning to the merits of the Lanham Act claim, Defendant ACTAB, the worldwide distributor of Defendants' products, moves pursuant to Rule 12(b)(1) to dismiss the Lanham Act and Florida unfair competition claim as to foreign-based activity. The United States Supreme Court has held that three factors must be analyzed in deciding whether jurisdiction over extraterritorial disputes is present: 1) whether the defendant is a United States corporation; 2) whether the foreign activity had substantial effects in the United States; and 3) whether exercising jurisdiction would interfere with the sovereignty of another nation. *Steele v. Bulova Watch*, 344 U.S. 280, 286–89, 73 S.Ct. 252, 97 L.Ed. 319 (1952). Defendants rely upon an Eleventh Circuit opinion which applied this test in a lawsuit between a Lebanese plaintiff suing an American company for activities that took place in Lebanon. *Int'l Cafe, S.A.L. v. Hard Rock Int'l* (U.S.A.), Inc., 252 F.3d 1274 (11th Cir.2001).

In *Int'l Cafe*, the court concluded that the financial gain from royalties received by the defendant in the United States was insufficient to be considered as having a substantial effect in the United States. 252 F.3d at 1278–79. ATT argues that the substantial effect in this case is the damages to ATT, an American corporation.

This Court agrees that this fact distinguishes this case from *Int'l Cafe*, where the plaintiff was a foreign company.

Moreover, the Eleventh Circuit has also held that jurisdiction under the Lanham Act exists where allegedly infringing activity takes place in the United States, some defendants are American corporations, and an American corporation suffers damage. *Levi Strauss v. Sunrise Intern. Trading Co.*, 51 F.3d 982, 985 (11th Cir.1995); *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1180 (11th Cir.1994). In this case, ACTAB has: 1) engaged in interstate commerce in the United States; 2) directed advertising from Europe to the United States; and 3) allegedly caused substantial damages in the United States upon an American company. Additionally, exercising jurisdiction in this case would not interfere with the sovereignty of other nations. *See Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642–43 (2nd Cir. 1956).

### 2. False Advertising

■ The elements of a claim under the Lanham Act for false advertising are:

(1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising.

*Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir.2002). ATT has put forth evidence to at least create a genuine issue of material fact that Defendants' advertising claims for the TSF 07 were literally false. Although some of the terms in Defendants' catalog description are puffery and not

actionable, the phrases "vibration-damped" and "has a governor turbine motor that maintains high speed even when feed force is applied" are statements of fact. *See* Atlas Copco catalog, p. ATT 13602, filed as Plaintiff's Exhibit 22 to Plaintiff's Notice of Filing [DE 285]. ATT has submitted evidence that the TSF 07 does not have a governed turbine motor that performs as advertised. Deposition of Bo Nilsson at pp. 61–63, filed as Plaintiff's Exhibit 15 [DE 285].

If an advertisement is literally false, a plaintiff need not present evidence of consumer deception. *Johnson & Johnson*, 299 F.3d at 1247. As for materiality, a plaintiff may prove that the defendant "misrepresented an inherent quality or characteristic of the product." *Id.*, at 1250, *citing Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2nd Cir. 1997). In this case, for purposes of summary judgment, the Court concludes that there is a genuine issue of material fact as to whether having a governor in a "governed turbine die grinder" is an inherent quality of the product, and whether the advertisement is literally false regarding an inherent quality of the product.

### 3. Causation of Damages

The final element of a Lanham Act false advertising claim is that the false advertising caused injury to plaintiff. Here, ATT's claim fails. The typical false advertising claim occurs when a company misrepresents a competitor companies' product. In the case at bar, ATT is claiming that Defendants misrepresented their own products, causing consumers to shun all similar products regardless of the identity of the seller. ATT's evidence of causation is sworn testimony from its employees and distributors that customers told them

at trade shows that they will not buy ATT's tool because they have an Atlas Copco tool just like it and it does not operate as they would like. Deposition of Kemma Dodds, ATT's Production Manager, at pp. 127–130, 155–163, 181–187, filed as Plaintiff's Exhibit 31 [DE 285]; Deposition of Simon Shane (December 18, 2002), ATT's Chairman, at pp. 111–121, 174–175, filed as Plaintiff's Exhibit 32; Deposition of Jurgen Funk at pp. 83–86,[5] 158–160, filed as Plaintiff's Exhibit 39; Deposition of Jurgen Uhlarz, at pp. 186–190, 201–202, 206–207, filed as Plaintiff's Exhibit 40; Deposition of Peter Hold at pp. 102–105, 161–162, filed as Plaintiff's Exhibit 41; Deposition of Abby Petzenbaum at pp. 159–160, 170, filed as Plaintiff's Exhibit 42; Deposition of Wil Verbruggen at pp. 102–120, 130–136, filed as Plaintiff's Exhibit 43; Deposition of Hans Westin at pp. 107–112, 166–171, 262–266, filed as Plaintiff's Exhibit 44.

Before addressing this admissibility of this evidence, the Court notes that the only evidence that consumers linked the **false advertising** to their decision not to purchase ATT's product is found in the declaration and deposition of Wil Verbruggen. Plaintiff's Exhibit 43 at pp. 106–111. All the other testimony regarding trade show interaction is that consumers stated that they were dissatisfied with the performance of the Atlas Copco tool, and therefore were not interested in purchasing ATT's tool. These statements do not link the false advertising to the decision not to purchase ATT's tool.

The fatal flaw with the evidence contained in the Verbruggen deposition is that, contrary to ATT's contention, the consumers' statements to Verbruggen are hearsay and not admissible under the

---

**5.** Mr. Funk's knowledge was based upon statements to him from his salespeople relaying customer comments. Mr. Funk did not obtain customer information directly from customers. Funk Deposition at 83.

state-of-mind exception found in Rule 803(3) of the Federal Rules of Evidence.[6] The Eleventh Circuit recently interpreted this exception, stating:

> that "the state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind." *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir.1980). Consistent with that position, we have explained that the purpose of the exclusion from Rule 803(3) admissibility is "to narrowly limit those admissible statements to declarations of condition—'I'm scared'—and not belief—'I'm scared because [someone] threatened me.'" *Id.*

*U.S. v. Samaniego*, 345 F.3d 1280 (11th Cir.2003). Even assuming that consumers could relate that they were deceived or confused or dissatisfied with the TSF 07, the reason given for this declaration of condition, that Atlas Copco's tools did not work as advertised, is not admissible. The consumers' belief that Atlas Copco tools did not deliver as promised, and therefore caused the consumers not to purchase ATT's products, goes far beyond what is admissible under the state of mind exception of Rule 803(3). Therefore, the evidence related by Mr. Verbruggen is inadmissible hearsay.

ATT argues that such statements are within the state of mind exception, citing to cases involving trademark or false designation of origin wherein "actual confusion" by consumers is an element of a claim. *See Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F.Supp.2d 1347, 1360–62 (S.D.Fla.1998) (cases cited therein). ATT argues that the decisions admitting such "confusion" evidence apply to this case. The Court has reviewed numerous decision of the Eleventh Circuit regarding admissibility of consumer statements,[7] and concludes that there is a difference between a "confusion" case and a "false advertising" causation requirement. As noted above, while the state of mind may be admissible, i.e. confusion, dissatisfaction, or even deception, the reason or belief behind this state of mind is inadmissible hearsay.

As noted within the quotation, the Eleventh Circuit's opinion is not new law.[8] Rule 803(3) itself states that the exception does not include "a statement of memory or belief to prove the fact remembered or believed...." The Advisory Committee Notes add that this exclusion "is necessary to avoid the virtual destruction of the hearsay rule from allowing state of mind, prov-

**6.** Plaintiff initially argues that these statements are not being offered for the truth of the matter asserted. The Court rejects this argument. It is only because of the asserted truth of the statements that they are being offered.

**7.** *Frehling Enterprises v. Int'l Select Group*, 192 F.3d 1330, 1341 (11th Cir.1999), *cert. den.*, 530 U.S. 1214, 120 S.Ct. 2216, 147 L.Ed.2d 249 (2000) (plaintiff's president testified that professional buyer entered competitor's store and could not understand why showroom sign was incomplete as to name of store—evidence admitted but assigned little weight); *Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1185 (11th Cir.1985), *cert.*

*den.*, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985) (plaintiff's president testified that his friends asked if defendant was related company—court discounted testimony as none of the friends testified); *University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1546 (11th Cir.1985) (testimony of professor relating that 10 to 15 consumers inquired of him whether University was responsible for selling beer); *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 843–44 (11th Cir.1983) (consumers actually testified).

**8.** *See T. Harris Young & Assoc. v. Marquette Electronics*, 931 F.2d 816, 826 (11th Cir. 1991).

able by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." Therefore, ATT cannot argue that they have not had notice or opportunity to obtain such consumer statements directly from lost customers. The time for presenting such admissible evidence has passed. Therefore, the Court concludes that there is no material issue of disputed fact as to causation of ATT's damages from the alleged false advertising. Summary judgment in favor of Atlas Copco on the Lanham Act claim is thus appropriate.

### D. Breach of Contract

In Count III of its complaint, ATT alleges that ACTAB breached the Private Brand Agreement by manufacturing and selling competing products exploiting ATT's technology covered by ATT's patents. First Amended Complaint, ¶¶ 36–37. ACTAB argues that any breach of the contract provision containing the non-exploitation clause occurred after ATT's termination of the contract. ACTAB argues that the only specific reference in the contract to post-termination obligations is for ATT to provide spare parts for five years. Exhibit A to First Amended Complaint, ¶ 9. The Court disagrees. The plain language of the non-exploitation provision states that "this provision is valid for the life of the patent (including applicable application periods)." Id. at ¶ 6. Thus, this provision survives termination for the life of the patents or existing applications held by ATT at the time of termination of the agreement.

ACTAB argues that the '346 patent cannot be covered under paragraph 6 since its application had not even been filed at the time of termination, and ATT failed to "inform AC well in advance before imple-

menting any modifications or improvements of the product." Id. ATT presents evidence that its Chairman, Simon Shane, "discussed with [Defendants] that we would be developing or working on developing a braking mechanism... that uses exhaust air to stop the tool in a few seconds." Deposition of Simon Shane (January 31, 2002) at p. 44, filed as Plaintiff's Exhibit 11 [DE 285].

This Court concludes that the contract cannot be interpreted to include patents applied for after termination of the Agreement. To so construe the contract would put both parties in a perpetual relationship. In addition, under the terms of paragraph 6, Mr. Shane's testimony about discussions of developing a braking mechanism do not constitute "inform[ing]" ACTAB of such a modification. The duty to "inform" of a modification or improvement must mean that the improvement or modification has been developed and is, in fact, going to be implemented. Mere discussions about developing an-improvement or modification cannot reasonably be interpreted as imposing an obligation on Defendants to refrain from legitimate business activity. The Court notes that ATT has conceded that it did not provide actual notice to ACTAB of the issuance of the '346 patent. Therefore, interpreting the terms of the Agreement in accordance with the ordinary meaning of its terms, exploitation of the '346 patent is not a breach of contract.[9]

At this point, the Court notes that because the language of paragraph 6 refers to "patents" in the plural, Plaintiff could proceed with a claim for exploitation of its '752 governor patent. However, Plaintiff has framed the alleged breach in its amended complaint as infringement of

---

9. Of course, unauthorized exploitation of the '346 patent would constitute patent in-

fringement.

the '346 patent. Moreover, in its opposition memorandum to ACTAB's motion for summary judgment on this claim, ATT argues that it is the false advertising of the TSF 07 as having a governor that caused the breach of contract damages.[10] ATT argues that by advertising the TSF 07 as having identical features as ATT's tools, ACTAB exploited ATT's technology. However, the term "exploit" in the context of a competitor's technology means actual use of the technology. The term "exploit" means "to make productive use of," "utilize," or make use of meanly or unjustly for one's own advantage. *Merriam–Webster's Collegiate Dictionary* 409 (10th ed.1996). Simply advertising a similar product using descriptions similar to the descriptions used by ATT is not exploiting ATT's technology. It may be exploitation of advertising materials, or false advertising or a trademark violation, but such acts are not exploitation of technology.

Upon review of the Agreement, the First Amended Complaint, and the entire record before this Court, there is no genuine issue of disputed material fact regarding the lack of breach of the contract by ACTAB as plead and argued by ATT. Therefore, the Court will grant summary judgment to ACTAB on the breach of contract claim.

### E. Fraud in the Inducement

In Count IV of the Amended Complaint, ATT alleges that before entering into the Agreement, ACTAB falsely represented to ATT that it had no intention of misusing ATT's proprietary information and thereby fraudulently induced ATT's to enter into the agreement. First Amended Complaint, ¶¶ 39–40. Defendants argue that such a claim is precluded by the economic loss rule, and, that ATT has no evidence that at the time the contract was entered into the statement was false.

Under Florida law,[11] an alleged misrepresentation "is actionable only if the defendant knew or should have known that the statements were false, or if the statements were made without knowledge of their truth or falsity." *Bissett v. Ply–Gem Industries, Inc.*, 533 F.2d 142, 145 (5th Cir.1976).[12] The only evidence ATT asserts to support its claim that ACTAB intended to exploit ATT's technology is the deposition of Hakan Osvald, an in-house counsel for Atlas Copco. The cited testimony, however, does not support ATT's assertion. Osvald testified that he understood that the use of the word "exploit" in paragraph 6 of the patent was broader than infringing the patent. Deposition of Hakan Osvald at 50–51, filed as Exhibit N to ATT's Notice of Filing Exhibits to Plaintiff's Amended Memorandum in Opposition to Defendants' Motion for Summary Judgment [DE 229 or 231]. ATT asserts that this statement in the deposition (which is not submitted in its full context) is evidence that ACTAB in-

---

**10.** ATT has taken the position that the TSF 07 does not contain a governor. As a result, ATT recognizes that it would be factually inconsistent on the one hand to argue that the TSF 07 does not have a governor, and on the other hand sue Defendants for breach of contract for using the governor technology of the '752 patent in the TSF 07 product.

**11.** Under Florida law, torts that are independent of the contract claim, such as fraudulent inducement, are not precluded by the economic loss rule. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1239 (Fla.1996).

**12.** The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

tended to keep confidential only the information in the patent. To the contrary, the Court concludes that the testimony simply indicates the background behind the negotiation of the terms of the Agreement, and what those terms meant to Mr. Osvald. This statement is not evidence at the time the contract was negotiated and executed that ACTAB intended to use proprietary information improperly.

The Court therefore concludes that ATT has not presented more than a scintilla of evidence regarding ACTAB's intent to fraudulently induce ATT into a contractual relationship. Summary judgment in favor of ACTAB on the fraud claim is therefore appropriate.

### F. Breach of Confidential Relationship

ATT alleges in Count V of its Amended Complaint that ACTAB breached a confidential relationship by acquiring access to ATT's confidential information pursuant to the Agreement, and then using and disclosing this information to others in the sale and promotion of ACTAB's products incorporating ATT's technology. Amended Complaint, ¶ 43–44. The Court notes that this claim is closely related to the breach of contract, fraud, and Lanham Act claims.

There is no dispute that ACTAB legitimately obtained information from ATT for use in public advertisements for the TSF 06 product manufactured and sold pursuant to the Agreement between the parties. ATT argues that after termination of the Agreement, ACTAB later used the same, previously confidential information, to advertise the TSF 07. ACTAB asserts that the use of information that became public when incorporated into advertisements is no longer use of confidential information. ATT responds by noting that not all the information was publicly available, and, in the context of a confidential relationship,

ACTAB had a duty to maintain confidentiality even if some of the information was public.

Specifically, ATT has put forth record evidence that information in the Factmaster internal memorandum for Defendants' TSF 07 turbine grinder could be confidential information, specifically marketing and distribution information. *See* Factmaster, Exhibit C to ATT's Notice of Filing Exhibits to Plaintiff's Amended Memorandum in Opposition to Defendants' Motion for Summary Judgment [DE 232]; *see also* Shane depositions and declaration, filed as Exhibits A, B, and F to ATT's Notice of Filing Exhibits [DE 232].

█ Under Florida law, a constructive trust may arise where property has been acquired through a breach of a confidential relationship. *McIntosh v. Harbour Club Villas Condominium Association,* 468 So.2d 1075, 1078 (Fla. 3d DCA 1985) (J. Nesbitt, specially concurring). ACTAB's duty in this case is to maintain the confidentiality of information imparted through the contractual relationship. *See Roboserve, Ltd. v. Tom's Foods, Inc.,* 940 F.2d 1441, 1456 (11th Cir.1991) (in interpreting Georgia law, "[a] confidential relationship is distinguished by the expectations of the parties involved," even if statutory definition of trade secrets is not met).

█ ATT has put forth sufficient evidence to create a genuine issue of material fact that ACTAB has breached its duty of a confidential relationship by using confidential marketing and distribution information to sell ACTAB's own products. However, the damages from this breach do not extend as far as ATT alleges. ATT's assertion that consumers did not buy ATT's products because ACTAB sold inferior products has no evidentiary support. As discussed above in the context of the Lanham Act claim, ATT has presented no admissible evidence that Defendants' *ad-*

*vertising* caused consumers not to buy ATT's products. In the context of this tort claim for breach of a confidential relationship, there is no admissible evidence that the misuse of ATT's confidential information in ACTAB's advertising is the proximate or but for cause of ATT's damages, other than those instances of actual sales by ACTAB. Therefore, the Court denies ACTAB's motion for summary judgment on ATT's claim for breach of confidential relationship as to liability, but grants the motion in part as to the extent of the damages resulting from the breach.

### G. Unfair Competition

As pled in Count VI of its Amended Complaint, ATT's claim for unfair competition under Florida law alleges misappropriation of technology (as in its contract claim), false advertising (as in its Lanham Act claim) and use of confusingly similar advertising. The Court has already concluded that summary judgment is appropriate as to the breach of contract claim and the Lanham Act claim. In addition, the Court has noted that ATT has not presented any evidence that consumers believed they were purchasing ATT products when in fact they were purchasing Atlas Copco products, as is the typical case of false designation of origin. Thus, the unfair competition claim does not add any viable claims other than those already discussed.

Therefore, the Court will grant summary judgment to Defendants on Count VI.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment regarding breach of confidential relationship and fraud claims [DE 91] is hereby **GRANTED in part** as to the fraud claim in Counts IV, and **DENIED in part** as to the breach of confidential relationship claim in Count V, except that damages in Count V are limited as discussed in the order;

2. Defendants' Consolidated Motion for Summary Judgment [DE 250] is hereby **GRANTED in part** as to the claims in Counts II, III and VI, and **DENIED in part** as to the claims in Count I;

3. Within Count I, Patent Infringement, summary judgment is **GRANTED in part** as to damages prior to filing of the lawsuit due to ATT's failure to properly mark its product;

4. Defendants' Motion to Partially Dismiss Plaintiff's Lanham Act and Florida Unfair Competition Claims Under Rule 12(b)(1) [DE 245] is hereby **DENIED**;

5. This case remains set for pretrial conference and calendar call on Friday, September 26, 2003 at 2:00pm, and for trial starting the week of October 6, 2003;

6. At the pretrial conference, the parties should be prepared to argue all pending motions in light of the rulings contained in this Order Granting in Part Motions for Summary Judgment.